UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALDINE GANN, Personal Representative of the Estate of JESSE L. GANN, deceased | ) ) ) ) | |
| Plaintiff, | ) ) | No. 06 C 2366 |
| v. | ) ) | Magistrate Judge Morton Denlow |
| DENNIS OLTESVIG, and TTI, INC. | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

On March 26 through 28, 2007, the Court conducted a jury trial in this wrongful death case. On March 28, 2007, the jury returned a verdict for Plaintiff Geraldine Gann ("Plaintiff"), personal representative of the estate of Jesse Lee Gann ("Gann") in the amount of $9,362,820.56, against Defendants Dennis Oltesvig ("Oltesvig") and TTI, Inc. ("TTI") (collectively "Defendants"). Before the Court are Plaintiff's Rule 59(e) motion to reconsider the Court's order granting judgment as a matter of law in favor of William Timblin Transit, Inc. ("WTT") and Defendants' motion for a new trial or for remittitur. After oral argument on May 23, 2007, the Court denied both motions by minute order, with this written opinion to follow.

### I. PLAINTIFF'S RULE 59(e) MOTION

On March 27, 2007, after all evidence relevant to Plaintiff's claim that Oltesvig was an agent of WTT had been presented, the Court concluded that there was no legally sufficient

evidentiary basis for a jury to find for Plaintiff on her claim against WTT, granted judgment as a matter of law in favor of WTT, and dismissed WTT from the case. Plaintiff asks the Court to reconsider.

**A.     Legal Standards**

In diversity cases, state law governs motions for judgment as a matter of law. *See Jackson v. Bunge Corp.,* 40 F.3d 239, 242 (7th Cir. 1994) (addressing motions for directed verdict, which are now called motions for judgment as a matter of law). Under Illinois law, a directed verdict–the Illinois state law equivalent of judgment as a matter of law–should be granted if "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." *Id.* (quoting *Pedrick v. Peoria & Eastern R.R.*, 229 N.E.2d 504, 513-14 (Ill. 1967)).

"An agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf." *Amigo's Inn, Inc. v. License Appeal Comm'n of Chicago*, 822 N.E.2d 107, 113 (Ill. App. 2004). Had the issue gone to the jury, the instructions would have read:

> An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts business, manages some affair or does some service for the principal, with or without compensation. The agreement may be oral or written, express or implied. If you find that one person has the right to control the actions of another at a given time, you may find that the relation of principal and agent exists, even though the right to control may not have been exercised.

2

Illinois Pattern Jury Instructions–Civil 50.05 (2006).

**B.      Relevant Evidence**

Plaintiff contends that a jury could reasonably conclude that Oltesvig was an agent of WTT based on the following evidence: (1) WTT owned the truck Oltesvig was driving, which, under Illinois law, creates a presumption that Oltesvig was an agent of WTT; (2) a bill of lading for the trip during which the accident occurred showing that the pick-up was being made by Oltesvig for "TTI, Inc.-Flatbed Division" ("TTI-Flatbed"), combined with Oltesvig's trial testimony that he was performing the trip for TTI-Flatbed and William Timblin Sr.'s ("Timblin") deposition testimony that TTI-Flatbed is WTT; (3) Defendants' answer to the original complaint admitting that Oltesvig was driving for WTT at the time of the accident; and (4) assorted evidence showing that WTT and TTI are related entities.

**1.      WTT's Ownership of the Truck Oltesvig was Driving**

Plaintiff argues that she was entitled to the benefit of a presumption that WTT, as owner of the truck Oltesvig was driving, was Oltesvig's principal. Under Illinois law, proof of ownership of a vehicle is *prima facie* evidence of an agency relationship between the driver and the owner. *Bell v. Reid*, 454 N.E.2d 1117, 1119 (Ill. App. 1983). If a plaintiff shows proof of ownership, the defendant must come forward with evidence that the driver was not acting as its agent. *Id.* The burden of proof remains with the party alleging the existence of an agency relationship. *Id.*

The Court finds that the presumption does not apply on these facts. Illinois courts have applied the presumption where the only relevant entities are the owner and driver. The

facts here differ, however, because while WTT is the owner of the truck Oltesvig was driving, it is undisputed that WTT leased the truck to TTI, who entrusted it to its employee Oltesvig at the time of the accident. Illinois courts have not addressed these factual circumstances.[1]

The logic underpinning the presumption indicates that the presumption should not apply to these facts. The Illinois Supreme Court has stated, in a case addressing the presumption of agency from vehicle ownership: "A presumption is an inference which common sense draws from the known course of events or from circumstances usually occurring in such cases." *McElroy v. Force*, 232 N.E.2d 708, 710 (Ill. 1968). The presumption of agency arising from ownership of a vehicle where the only relevant entities are an owner and a driver is dictated by common sense: one would expect that the owner of a vehicle could exert control over the driver. The same logic does not apply here. When the owner of a vehicle leases it to another, one would not ordinarily expect that the owner would be able to control the use of the vehicle by an agent of the lessee.

Illinois courts have also supported the presumption because

> it should be an easy matter for [the vehicle owner] to bring forth evidence showing that the driver was not his servant or that [the owner] had no business occasioning such use as the driver was making of the car, at the time and place of the accident, while it would ordinarily be a difficult thing for the plaintiff to establish the contrary.

---

[1] In *DeLeonardis v. Checker Taxi Co.*, the plaintiffs argued on appeal that the defendant taxi driver should be presumed to be the agent of the taxi's owner where the owner leased the taxi to a different driver who then loaned it to the defendant driver, but the plaintiffs failed to allege this theory in their complaint so the court did not decide the issue. 545 N.E.2d 155, 158-59 (Ill. App. 1989).

*Bell*, 454 N.E.2d at 1119-20 (internal quotes and citation omitted). This reasoning is strained where the owner has leased the vehicle away and is not necessarily familiar with the lessee's operation of the vehicle. While the lessor would be expected to have evidence showing that the vehicle had been leased and to whom, the lessor would ordinarily have no knowledge of what the lessee has done with the vehicle or the circumstances of the driver's use of it at some particular time. Only the lessee and the driver would be expected to have such information, and the lessor would not necessarily be in any better position to obtain it than the plaintiff.

A typical automobile lease is an apt example. If General Motors leases a pick-up truck to a landscaping company, one would not expect that General Motors controls the way in which the landscaping company's employees use the truck, and it would defy common sense to imagine that the landscaping company's employees are agents of General Motors. Nor would General Motors be expected to have any knowledge about the day-to-day use of the vehicle by the landscaping company or its drivers.

In essence, by leasing the vehicle to another entity, the owner has contracted away the very elements of ownership that justify the presumption of agency under Illinois law. Therefore, the Court concludes that the presumption under Illinois law that the driver of a vehicle is the agent of the vehicle's owner does not apply where the owner has leased the vehicle to a third party who in turn has entrusted it to a driver.[2]

---

[2] Plaintiff has argued that WTT and TTI were run as a common enterprise, and introduced evidence purporting to support that theory. This evidence would have relevance, if at all, to the particularities of this case, but does not support Plaintiff's position on the legal issue of whether the presumption should apply to cases in which the

Further, even if the presumption applied, Defendants offered clear evidence to rebut the presumption. Plaintiff relies heavily on *Horst v. Morand Bros. Beverage Co.*, which holds that while a court may direct a verdict for the defendant if the defendant rebuts the presumption with an uncontradicted and unimpeached witness, "[t]he weight to be given the presumption, whether it has been overcome, and whether agency has been proved are, ordinarily, questions for the trier of fact." 237 N.E.2d 732, 736 (Ill. App. 1968). In *Horst*, a directed verdict was inappropriate because the testimony rebutting the presumption was contradicted and impeached. *Id.*

Defendants offered substantial evidence to rebut the presumption that Oltesvig was acting as an agent of WTT at the time of the accident. On direct examination by Plaintiff's counsel, Timblin testified that the sole purpose of WTT was to lease trucks to TTI. T. 3/27/07 P.M. at 39.[3] On cross-examination, Timblin testified that WTT does not employ truck drivers, does not have authority from the government to make pick-ups or deliveries, and did not employ Oltesvig. T. 3/27/07 P.M. at 54-55. While Timblin was impeached with respect to other issues, his testimony on these points was not contradicted.

Oltesvig testified that he was working for TTI at the time of the accident, was driving a truck labeled "TTI" on the side, applied for a job with TTI, was given a TTI employee handbook, charged gas on a TTI credit card, invoiced repairs to TTI, kept a TTI logbook, was

---

owner has leased the vehicle to a third party. Further, as the Court concludes below in section II.B.4, Plaintiff's purported common enterprise evidence does not support Plaintiff's theory that Oltesvig was WTT's agent.

[3] Citations to the record are as follows: the trial transcript is abbreviated T. [date and session] at [page]; Plaintiff's trial exhibits are PX; Defendants' trial exhibits are DX.

paid by TTI, had never heard of WTT, and was not working for WTT. T. 3/27/07 A.M. at 60-65. Like Timblin, Oltesvig was impeached several times, but not with respect to these specific statements.

Even reading *Horst* to hold that a defendant is not entitled to a directed verdict where the witnesses on which the defendant relied were impeached on other points, Defendants have supported their assertion that Oltesvig was not WTT's agent with sufficient documentary evidence to require Plaintiff to have produced additional evidence to survive Defendants' motion for judgment as a matter of law. Oltesvig's TTI application, employee handbook, fuel receipts, repair order, logbook, and payroll records all indicate that Oltesvig was an agent of TTI. DX 1-5, 7.

Finally, Plaintiff argues that one can be an agent of more than one entity, so that evidence that Oltesvig was TTI's employee is not sufficient to foreclose the possibility that he was also WTT's agent. *See Kern v. Uregas Serv. of West Frankfort, Inc.*, 412 N.E.2d 1037, 1054-55 (Ill. App. 1980). Even applying the presumption of agency from ownership of the vehicle, the Court finds that no reasonable jury could have found that Oltesvig was WTT's agent where all of the testimony indicated that Oltesvig was TTI's agent alone. Plaintiff was not entitled to have the issue decided by the jury on the basis of the presumption alone.

### 2. TTI-Flatbed Evidence

Plaintiff attempts to connect several pieces of evidence to show that Oltesvig was working for WTT on the trip at issue. First, Plaintiff points to the bill of lading for the trip,

7

which showed that the trip was made for "TTI, Inc.-Flatbed Division." DX 6. Plaintiff then highlights the following portion of Oltesvig's testimony on direct examination:

> Q. [TTI-Flatbed] is who you were picking up for and representing at the time of the pick up?
>
> A. TTI Flatbed, yes, sir.
>
> * * *
>
> Q. In doing this trip, in picking up this load, were you doing a business for the Flatbed Division for TTI?
>
> A. Yes, sir.
>
> Q. And in doing this trip were you providing a service for the Flatbed Division of TTI?
>
> A. Yes, sir.
>
> Q. And for the purposes of this trip you were the representative of the Flatbed Division of TTI?
>
> A. Yes, sir.

T. 3/27/07 A.M. at 53-54. Finally, Plaintiff attempts to connect this to WTT through an excerpt from Timblin's deposition testimony:

> Q. . . . Is there a Flatbed Division at TTI, Inc.?
>
> A. That would be William Timblin Transit.

T. 3/27/07 P.M. at 38-39.[4] Plaintiff argues that taken together, this evidence shows that Oltesvig was an agent of WTT at the time of the accident.

---

[4] Timblin testified at trial that "William Timblin Transit has nothing to do with the Flatbed Division," and that the bill of lading was some sort of error. *Id.* at 57.

The Court agrees that this evidence provides Plaintiff some support, but not enough to survive a motion for judgment as a matter of law. The jury could have believed Oltesvig's trial testimony that he was working for TTI-Flatbed, chosen to believe Timblin's deposition testimony over his trial testimony, and concluded that Oltesvig believed he was working for an entity that turned out to be WTT. Even so, this evidence is entitled to limited weight and would not provide a reasonable basis for a jury to find for Plaintiff against WTT. If WTT and TTI-Flatbed were in fact the same entity, one would expect some sort of documentary evidence to that effect. Plaintiff has offered none, and was not entitled to have the issue go to the jury without additional evidence that Oltesvig was WTT's agent.

### 3. Defendants' Answer to the Original Complaint

Plaintiff's original complaint sued Oltesvig and WTT. PX 75. Defendants' answer identified the responding parties as Oltesvig and TTI, "incorrectly sued as [WTT]." PX 76. Defendants' answer admitted that at the time of the accident, "Oltesvig was operating the vehicle within the scope and course of his agency, service, or employment with Timblin, Inc." *Id.* Plaintiff later filed an amended complaint, and Defendants' answer identified Oltesvig as TTI's agent, not WTT's. Given that the answer responded on behalf of TTI and not WTT, this evidence is of very limited support to Plaintiff, and is insufficient on its own for a reasonable jury to conclude that Oltesvig was WTT's agent.

### 4. Assorted Evidence that TTI and WTT are Related Entities

Plaintiff notes certain evidence about the relationship between TTI and WTT, such as evidence that WTT owned all of the relevant flatbeds, that there were common officers

9

to both entities, and that one must call or email TTI to reach WTT. It is unclear whether Plaintiff points to this evidence as direct support for its agency claim or as examples of issues on which Timblin was impeached and which would have allowed the jury to find Timblin's testimony not credible. The evidence provides no direct support to Plaintiff as it does not tend to show that WTT had the ability to control Oltesvig's work; it shows only that the companies are related. To the extent Plaintiff uses this evidence as examples of impeachment, the Court agrees that the jury could have found Timblin not credible, and has taken that into account in the analysis.

## C. Plaintiff Provided Insufficient Evidence of Agency to Survive Defendants' Motion for Judgment as a Matter of Law

Without the presumption of agency based on vehicle ownership, Plaintiff is left with the TTI-Flatbed evidence and Defendants' answer to the original complaint. The Court concludes that Plaintiff's evidence provides an insufficient basis for a jury reasonably to conclude that Oltesvig was WTT's agent. None of this evidence tends to demonstrate in any meaningful way that WTT had the ability to control Oltesvig's work. The Court denies Plaintiff's Rule 59(e) motion to reconsider granting judgment as a matter of law for WTT.

## II. MOTION FOR NEW TRIAL OR REMITTITUR

Defendants assert six reasons why they are entitled to a new trial: (1) the Court failed to instruct the jury that Gann's parking in a no-parking zone is *prima facie* evidence of negligence; (2) the Court failed to instruct the jury that it could find Gann contributorily negligent for standing on the under-ride bar ("ICC bar") of his truck; (3) the Court failed to

10

instruct the jury that it could find Gann contributorily negligent for failing to take precautions; (4) the Court should not have instructed the jury that it could infer that Gann acted safely at the time of the accident from evidence that Gann had a habit of acting safely as a driver; (5) the Court should not have instructed the jury that it could infer that any pictures taken by Oltesvig at the scene of the accident would have been adverse to Defendants; and (6) the verdict with respect to contributory negligence was against the manifest weight of the evidence. Defendants also seek remittitur or a new trial on damages.

### A. No-Parking Zone

Defendants argue that the Court should have given Illinois Pattern Civil Instruction ("IPI") 60.01, which would have instructed the jury that it could consider the fact that Gann was parked in a no-parking zone in determining whether Gann was contributorily negligent. The notes to IPI 60.01 state:

> This instruction should be given only where the evidence would support a finding that the injury complained of was proximately caused by a violation of a statute, ordinance, or administrative regulation, rule, or order intended to protect against such an injury, and that the injured party is within the class intended to be protected by the statute, ordinance, or administrative regulation.

Illinois Pattern Instruction–Civil 60.01, Notes on Use (2006); *see also First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (Ill. 1999). Defendants argue that Gann was parked in an officially-marked no-parking zone in violation of 625 ILCS 5/11-1303, which prohibits stopping, standing, or parking at any place where prohibited by official signs. *Id.* at 1303(a)(1)(I), (a)(2)(f), (a)(3)(b).

Defendants introduced no evidence tending to show that Gann's parking in the no-parking zone was the proximate cause of his death. Defendants argue that the area was narrow and heavily trafficked, and therefore unsafe for parking, but that theory of negligence is entirely independent of the no-parking status of the area. Further, Oltesvig testified that he saw Gann's truck and was aware of its location, T. 3/27/07 A.M. at 34, so Defendants cannot plausibly argue that Oltesvig was not expecting a truck to be parked in the no-parking zone. There was no evidentiary basis for the jury to have concluded that parking in the no-parking zone was the proximate cause of Gann's death, rather than tragically placing him in the wrong place at the wrong time. *See First Springfield*, 720 N.E.2d at 1071 ("[I]f the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury.").

Further, because Defendants failed to show that the no-parking regulation was intended to protect human life or property, IPI 60.01 does not apply. Illinois courts have not addressed whether no-parking regulations under section 1303 are intended to protect human life or property, but have held that other provisions of section 1303 were so intended. *See Amstar Corp. v. Aurora Fast Freight,* 490 N.E.2d 1067, 1070 (Ill. App. 1986) (provision prohibiting stopping, standing or parking a vehicle on any controlled-access highway); *Sheehan v. Janesville Auto Transport*, 430 N.E.2d 131, 135 (Ill. App. 1981) (provision prohibiting parking in an intersection or within twenty feet of a crosswalk, but not municipal ordinance regulating parking to preserve residential character of neighborhood).

Section 1303 does not list what areas are deemed no parking; it prohibits parking in areas that have been designated no parking by separate regulation. While Defendants argue that all subsections of section 1303 should be interpreted together, both common sense and case law counsel that areas are designated no parking for different reasons, not all of which involve safety. *See Sheehan*, 430 N.E.2d at 135. Therefore, Defendants needed to show not only that this provision of section 1303 was intended to protect human life or property, but that the specific area in question in the case was designated no parking for safety reasons. Defendants have offered no evidence showing why this area was designated no parking, making the instruction inappropriate. Therefore, the instruction would have been improper.

**B.     ICC Bar**

A party is entitled to a jury instruction if there is some evidence supporting the theory contained in the instruction. *Villa v. Crown Cork & Deal Co.*, 560 N.E.2d 969, 972 (Ill. App. 1990). An instruction must correctly state the law, be sufficiently clear to avoid misleading the jury, and not overemphasize any particular matter. *Id.*

The Court gave the following instruction on contributory negligence:

> The defendants claim that the plaintiff was contributorily negligent in the following respects: Mr. Gann failed to maintain a proper lookout when working in and around his truck.

Defendants are correct that there was evidence showing that Gann was standing on the ICC bar at the time of the accident, the ICC bar is not intended to be used as a step ladder, and Oltesvig's blind spot as he was backing up was roughly the area of the ICC bar. T. 3/26/07 P.M. at 48, 67; T. 3/27/07 P.M. at 12. The jury could have concluded from this

evidence that Gann was negligent. Nonetheless, the instruction given sufficiently provided for Defendants' theory that Gann was negligent by working from the ICC bar, and the instruction Defendants tendered would have needlessly complicated the instruction.

**C.      Failure to Take Precautions**

Like Defendants' tendered ICC bar instruction, this instruction was sufficiently subsumed by the instruction given.

**D.      Habit Instruction**

The Court gave the jury IPI 10.08, which states:

> If you decide there is evidence tending to show that the decedent was a person of careful habits, you may infer that he was in the exercise of ordinary care for his own safety at and before the time of the occurrence, unless the inference is overcome by other evidence. In deciding the issue of the exercise of ordinary care by the decedent, you may consider this inference and any other evidence upon the subject of the decedent's care.

Illinois Pattern Instruction–Civil 10.08 (2006). The instruction is to be given in wrongful death cases "when there are no witnesses to the occurrence, other than the defendant, covering the entire period in which the decedent must be in the exercise of ordinary care. Illinois Pattern Instruction–Civil 10.08 Notes on Use (2006). If a witness exists, but did not see the entire occurrence, especially the material moments, the instruction is proper. Illinois Pattern Instruction–Civil 10.08 Comment (2006).

Defendants argue that Brian Robinson was a witness to the entire accident and renders IPI 10.08 improper. Robinson testified, however, that he did not see what Gann was doing for much of the time immediately before the collision. T. 3/26/07 P.M. at 66-67. Robinson

14

saw that Gann was standing on the ICC bar, but could not say what Gann was doing at the time. *Id.* Because Robinson did not witness Gann's actions for the entirety of the few seconds before the collision while Oltesvig was backing up, his testimony was insufficient to negate the application of the instruction.

Defendants also argue that the evidence was insufficiently specific to establish habit. Donald LaTulip testified that he regularly saw Gann pull in and out of the relevant loading area, and that he observed "just the course of normal driving." T. 3/26/07 P.M. at 111. LaTulip also testified that Gann tarped his truck in a normal way, and that it was not uncommon for drivers to stand on the ICC bar. *Id.* at 118. This was sufficient to establish that Gann was a person of careful habits.

**E.   Missing Photographs**

The Court also gave IPI 5.01, stating:

> You should consider this instruction only if you find by a preponderance of the evidence that Dennis Oltesvig took photographs at the scene.
>
> If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:
>
> 1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.
>
> 2. The evidence was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown.

Defendants argue that the instruction was in error because while Oltesvig testified in his deposition that he took photographs at the scene, he amended his answer at trial to state that he did not. Oltesvig's deposition testimony was a sufficient evidentiary predicate to establish the existence of the photographs and justify the instruction.

Defendants also argue that the photographs would have been cumulative because witness testimony sufficiently described the accident scene. Without seeing the photographs, it is impossible to say that they are merely cumulative of the testimony. The instruction was properly given.

## F. Manifest Weight of the Evidence

Defendants argue that the verdict was against the manifest weight of the evidence with respect to Gann's contributory negligence. Defendants support this argument with the following evidence, which they assert is incompatible with the verdict: Gann was parked in a no-parking zone, was standing on the ICC bar, had his back turned to Oltesvig's truck, wore dark clothing and used a dark tarp, and did not use his hazard lights. After considering the evidence, the Court concludes that the verdict was not against the manifest weight of the evidence. The lack of hazard lights, as discussed above, is irrelevant because Oltesvig knew Gann's truck was behind him. The color of Gann's jacket was disputed. From the remaining evidence cited by Defendants, the jury could reasonably have concluded that notwithstanding

these facts, the sole responsibility under these circumstances lies with the driver who is backing up, and therefore that Gann did not fall below the standard of care.

## G. Damages/Remittitur

Finally, Defendants argue that the amount of damages was excessive and warrants either a new trial or remittitur. The jury awarded the following damages: approximately $63,000 for medical, funeral, and burial expenses; $700,000 for Gann's pain and suffering; $100,000 for Gann's disability; $500,000 for loss of money, goods and services; and $8,000,000 for loss of society and sexual relations.

Under Illinois law, a damages award is excessive if it falls outside the range of fair and reasonable compensation, results from passion or prejudice, or is so large it shocks the judicial conscience. *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997). Defendants argue that the loss of society award was not fair or reasonable because it so greatly exceeded the economic damages award, Gann earned only $15,000 per year, and given the ages of Gann's children, his parental responsibilities the two oldest children were largely at an end. The Court rejects Defendants' argument. There was substantial evidence showing that the Gann family was very close knit, and that Gann was a exceptionally loving and involved father and husband. In light of this evidence, the award was not excessive. Further, the amount of money Gann earned is completely irrelevant to the extent of his family's loss of society.

Defendants also argue that Gann experienced conscious pain and suffering for "only" 77 minutes. The evidence showed that Gann was in a tremendous amount of pain during that

17

time and was unable to move. All of the muscles and tendons in Gann's leg were severed. While being treated at the hospital, Gann repeatedly stated "I'm going to die." The jury's award for pain and suffering amounts to approximately $9000 per minute. Given the severity of the injury and Gann's feeling that he was about to die, the Court cannot conclude that the amount awarded was unfair or excessive.

Finally, Defendants argue that Gann was disabled for only a matter of hours, and that the award of $100,000 for that disability was excessive. The evidence showed that Gann was unable to move from the time of the accident until his death, and was unconscious for most of that time. It is difficult to put a value on such an injury, but the amount awarded was not so large as to shock the judicial conscious or lead the Court to conclude that the award was unfair or unreasonable. Therefore, the Court finds that the damages award was not excessive.

### III. CONCLUSION

**For the foregoing reasons, Plaintiff's motion to reconsider and Defendants' motion for a new trial or remittitur are denied.**

**SO ORDERED THIS 12th DAY OF JUNE, 2007.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| John William Patton, Jr. | 330 N. Wabash Street |
| Helen Aavik | #2900 |
| Patton & Ryan, LLC | Chicago, IL 60611 |

Counsel for Defendants

Bruce Robert Pfaff
Pfaff & Gill Ltd.
One East Wacker Drive
Suite 3310
Chicago, IL 60601

Counsel for Plaintiff